Thank you, Your Honor. This may have pleased the Court. Counsel, the order of the District Court denying the motion to suppress should be reversed and the case remanded for further proceedings. There are a number of issues here, but the core issue is the sufficiency of the probable cause enunciated in the warrant affidavit. And as indicated in our briefing, there are two areas of potential probable cause here. Now, it's our position that these are two legs of a stool that doesn't stand up in any case, but I'll take them one by one. The first allegation here or the first issue in the warrant affidavit is a call depicted as anonymous to the police stating that one person in the room, Ms. Amling, had stated there was a guy with a gun who she was trying to get away from. And as we've argued, it's our position that as explained in the warrant affidavit, this is anonymous. Now, the facts on the ground suggested or officers testified at the suppression hearing that the person identified himself as the father of Ms. Amling's child, but here the tip is presented as anonymous. Robertson It's anonymous even in this day and time when you have a cell phone number immediately listed. And is the Court referring here to the ---- Garreau Paragraph 2, I think, of the attachment. Correct. And that is corroborating information suggesting that the caller knew Ms. Amling. He provided her name and her cell phone number. But as in J.L., which we cited, these are pieces of corroborating information that suggest the caller is familiar with non-criminal facts. So familiar with the location of Ms. Amling, clearly familiar with her name, and obviously familiar with her cell phone number. Robertson Well, if you get a lot of details, the Supreme Court says it's not really anonymous, right? If you can get a lot, a lot, a lot of details, correct? I know that's a rough summary, but isn't that a summary of their cases? Garreau Paragraph 2 We would disagree as to ---- Robertson Oh, okay. Go ahead. Garreau Paragraph 2 Certainly, Your Honor. The identity of the caller remains anonymous. These are ---- those corroborating facts do go, to some extent, to the reliability of the tip. But it would be our position that the call is still anonymous. Scalia Wasn't most of the information corroborated by arrival and investigation? Garreau Paragraph 2 Certainly. As reflected in the warrant affidavit, Ms. Amling was there. She was at the place reported. And we wouldn't disagree with that. But the issue is that the facts having to do with criminal liability, and particularly with potential probable cause to search the hotel room, as in the warrant affidavit in any case, were not corroborated. So the warrant affidavit does present a circumstance where noncriminal facts are corroborated. But as far as the magistrate who was reviewing this affidavit can see, there's nothing to suggest that a firearm was found. And, in fact, based on the recitation in the warrant affidavit, that's a notable omission, because the warrant affidavit describes these people as currently being in custody. So it begs the question, what about the gun? What investigation was done? Turning to the other issue here, which is Mr. Smith's alleged previous involvement in an October 20 shooting incident, there are three problems with that. One is the level of proof alleged in the warrant affidavit. The second is the lack of recency three the lack of nexus between any supposed firearm and where Mr. Smith was. The warrant affidavit says this is a hotel room. It might be different if we were talking about someplace that was alleged to be Mr. Smith's home. But here, what the magistrate really was presented with is suspected involvement in, quote, unquote, approved charges that the county attorney was pursuing for a shooting three months previously. Now, there was a video of that. Does that change it again? A video of the previous shooting incident, right? We would argue that it doesn't change that. It is alleged, Your Honor, is correct in the warrant affidavit. The warrant affidavit also alleges that Smith had been identified as the shooting suspect on January the 10th of 2019 by another, quote, unquote, involved subject. So the video's presented here is that another unnamed involved person has named Mr. Smith and that on that basis the county attorney is seeking charges. Now, we know from the evidence at the suppression hearing that charges had actually been filed and presumably a trial information approved by the Iowa District Court judge, but that's not presented here. So I'll turn to the Franks argument, and I want to note there's a certain irony to the government's assertion that there are these two different sources of probable cause here, one being the anonymous tip, because as to the second prong of Franks, if the anonymous tip is important, then surely there's prejudice in its sufficient probable cause here. But it does go to show that, at least in the government's telling, there is supposed probable cause in how the police came there and had the officers accurately related to the reviewing magistrate what the police knew, which in this case was there was no further basis to pursue a domestic investigation and the officers were leaving the scene, and as they were leaving the scene, not planning to seek a warrant, not planning to seek further investigation for firearms. That would have changed the sum total of what's presented in the warrant affidavit substantially. It was also either knowing or reckless not to present this information for that reason, and as the officer who prepared the warrant affidavit testified, in fact, he intended this information simply to be how we got there, how the police arrived at where they were. It was not his intention to present this as probable cause. Now, of course, lawyers are arguing that it is. We're in court arguing about this, and that can't in a strict sense be tracked back to the officer. But the fact is it was presented in the affidavit in a way that gives rise or could give rise to the inference that there were firearms to be found in this hotel room, and not clarifying that this was not the case was reckless. I'll reserve the remainder of my time unless the Court has questions now. Thank you, Mr. Cross. Mr. Kahl? May it please the Court, Mr. Cross. I'll start where Mr. Cross started with the probable cause. We had here a report of a man with a gun in room 220 of the Quad Cities Inn. Smith was identified as a man in that room. By who? He was placed there. That was what Det. Who identified him? The officers at the scene identified both Smith and Amling. Smith had been recently identified, so in terms of key dates, the shooting in October was October 20th of 2018. That was on videotape. Very recently to the January incident on January 10th, another subject had identified Smith as the shooting suspect. January 25, then we come to this incident at the QC Inn, where the phone call from, identifies Rashina Amling, who is the call made to the father of her child, indicating a domestic argument, and a man with a gun. The search warrant was presented to a district associate judge in Scott County and approved by that judge. It was signed off by an assistant county attorney, two Federal judges, and the suppression proceedings followed. What facts does the government believe the district judge used here to conclude that a warrant was appropriate? Report of a man with a gun in room 220. Smith identified as the man in that room. The report that there was a domestic situation and that the woman involved had made a statement that there was a gun. The fact that Mr. Smith had been identified as the suspect in the shots fired incident from October, from which the gun had never been recovered. There is also the corroboration of the cell phone number, of Ms. Amling. Those are the key facts that the state district associate judge had. Based on those facts, there was a fair probability that a gun would be found in that motel room. Certainly, with the multiple state officials and Federal judges finding probable cause there, that would support our argument. There was a fair probability. Certainly, to the extent there was any deficiency in that search warrant, the officers certainly relied upon it in good faith. What we have here is the officers doing what you would expect the right thing. They arrived at the scene. They investigated the situation. As Mr. Cross mentioned, the officers initially were going to leave, but then they received additional information from the detectives. They received two key facts. Key fact one being that there was a warrant out from Ms. Amling. And secondly, that Mr. Smith was a suspect in the shots fired incident. They stabilized the situation at the exact same time Detective Morrell is applying for a search warrant downtown. By stabilizing, you mean taking her out of the room? She had an arrest warrant. No, I understand that. We used the word stabilizing, and that was a little too abstract for me to understand what it really meant. What do you mean stabilizing? In a couple of respects. First, when she voluntarily left the room to go for her Uber ride, she was placed under arrest and taken out of the mix. The officers then discussed what to do with Mr. Smith still being in the room. They were very concerned that he had a gun. They ultimately decided to approach the room and knock gently on the door, and he opened the door. Wait, they did it twice, right? One time they knocked to identify this police, and the other time they just knocked, right? Right. The earlier knocks, he didn't open the door. Correct. When they just knocked the second time, he did open the door, and as Judge Jackson found, there was a consent entry into the room. The officers did just a protective sweep. And that's reviewed for clear error, right, counsel? Yes. And the court has the video. So whether or not there was consent, nothing of substance was found there. This is where the inevitable discovery argument comes in, because we know that the officers were, in fact, actively pursuing that other line of investigation. The search warrant was signed off at about, I believe, 924 a.m. This whole incident started about ten after eight. So if they had not gone into the room, one of two things would have happened. One, Mr. Smith would have left the room, at which point the officers could have executed a probable cause of arrest. Might have been days later, though, right, counsel? No. Room service, bringing along a cooler? Well, he might have left, but if he didn't leave, then they would have, by 924, had a search warrant, and that would have allowed them entry into the room. So this isn't something that would have just gone on for some indefinite period of time. The officers were actively getting that search warrant that would have gotten them to the room. That ultimately led to the discovery of the firearms and the marijuana and the ceiling tiles. As to the anonymous tip, it doesn't really feel like an anonymous tip. Ms. Amling knew exactly who it was who had made that call, and she was on the phone. It's the magistrate's view that matters, right, and not Ms. Amling's? Yes. Yes. Proceed. The fact that Ms. Amling said things were fine at the time isn't dispositive. It doesn't mean there wasn't a gun there. This was a domestic situation, as Judge Jackson noted in his order. Domestic situations tend to be fast-moving and changing. But the judge also notes they stopped worrying about the gun then, until they got the warrant. Right? They stopped worrying about the gun, I suppose, before Detective Butt arrived and said, the man in the room is a suspect in a shooting incident from which we did not recover a gun, and then they had additional reasons to be concerned for that gun. Unless the, as to Detective Morrell, the affiant simply trying to place Mr. Smith in room 20 is why he wrote the affidavit the way he did. That was an explanation that Judge Jackson found to be credible, so that doesn't provide a Frank's remedy. The affidavit correctly reported what the 911 caller reported. So again, there is no Frank's remedy here. And frankly, I mean, Mr. Smith essentially got a Frank's hearing on the hearing in front of the magistrate judge made the credibility findings that were adverse to Mr. Smith. Unless there are questions about any of the other issues that are raised, the government would be content to rely on the briefs and would ask that the conviction and denial of the motion to suppress be affirmed. Thank you, Mr. Call. Thank you, Your Honors. I wanted to note a few points in response. First, and I'm not sure if the Court was raising this question or not, but it appears to me reviewing the orders in this case that the report and recommendation was adopted in its entirety. So what is in the report and recommendation is what the Court is reviewing. As to the question about what probable cause existed to search the room, it's important to distinguish suspicion about a domestic incident and suspiciousness about being involved in a previous crime from what probable cause might actually have existed to search the room itself, which is recovering a firearm. And there's an argument both that the call about the domestic mentioned a firearm which hadn't been recovered and that, in theory, this firearm from three months ago might simply be found where Mr. Smith was. But that second inference, particularly even if you accept the other facts about Mr. Smith's supposed involvement in the shooting incident, is extremely weak. Essentially, the argument is Mr. Smith is somewhere. The gun hasn't yet been recovered, so perhaps it is with him. And as I noted before, it would be different if we were talking about Mr. Smith's residence or something like that. As to the Franks issue, it's our argument both that or, excuse me, as to the good faith issue, it's our argument both that the good faith exception doesn't apply in circumstances where Franks does, and also that in the form of the illegal arrest of Mr. Smith, there was illegal pre-warrant conduct. Is there potential application for inevitable discovery? I'm sorry, Your Honor? Is there potential application for inevitable discovery under these facts? Certainly, Your Honor. As to the inevitable discovery argument, there are two prongs to the argument. One is simply that it rises or falls with the warrant and that the warrant was being actively pursued. It's our argument that the warrant was invalid in any case, and so inevitable discovery fails for that reason. We would reject the government's argument, which I take to be an alternative argument, that you can make in New York simply by claiming as officers, had we not gone into the house, we would have waited. Or had we not gone into the hotel, we would have waited for as long as it took, because that's an argument with potential applicability for, as the Court was suggesting, any number of days. And the rule is clear. You need an arrest warrant or a search warrant to enter a person's house in this way. And there's no argument that Mr. Smith had an expectation of privacy here, so the inevitable discovery argument doesn't apply for that reason also. There are separate fruits, we would agree, both for the arrest of Mr. Smith and for the search of the hotel, and we're more concerned with the search of the hotel, of course. I don't have any other argument unless the Court has questions. I see none. Thank you, Mr. Cross. Thank you also, Mr. Call.